CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
AUG 03 2017
JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| DUKE ENERGY PROGRESS, LLC, *Plaintiff,* <br><br> v. <br><br> ROANOKE RIVER BASIS ASSOCIATION, *Defendant.* | CASE NO. 4:17-CV-00032 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

Plaintiff Duke Energy Progress LLC ("Duke Energy") has brought a suit seeking declaratory judgment on a number of issues related to the compliance of one of its power generating stations, the Roxboro Steam Electric Station ("Roxboro Station"), with the Clean Water Act. Duke Energy brings suit against the Roanoke River Basin Association ("RRBA"), which had sent Duke a Notice of Intent to Sue pursuant to 33 U.S.C. § 1365, alleging various Clean Water Act violations at the Roxboro Station. Defendant RRBA has moved to dismiss Duke Energy's complaint on the grounds that: (1) the Court lacks subject matter jurisdiction, (2) the suit has been brought in the wrong forum, and (3) the Court should exercise its discretion under the Declaratory Judgment Act to decline to hear this suit.

The Court holds that subject matter jurisdiction exists for Plaintiff Duke Energy's claims because RRBA, the declaratory defendant, could have affirmatively asserted such claims in federal court under the Clean Water Act. However, the statutory section under which this controversy arises, 33 U.S.C. § 1365, only permits suit in the venue in which the alleged violations are occurring — in this case, the Middle District of North Carolina where the Roxboro

1

Station is located. Thus, venue is improper in the Western District of Virginia and the Court will dismiss the suit pursuant to 28 U.S.C. § 1406. Additionally, Duke Energy is impermissibly using the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, to engage in forum shopping and skirt the explicit terms of the Clean Water Act. Under the Court's discretionary authority to not grant declaratory relief, the Court would thus dismiss Duke Energy's claims, even if they were otherwise procedurally proper.

I. **Legal Background**

The Clean Water Act, 33 U.S.C. § 1251 *et seq.* ("CWA"), regulates the discharge of pollutants into waters of the United States. Citizens may bring suit against parties alleged to be in violation of the CWA. 33 U.S.C. § 1365. Citizen-plaintiffs must give notice of the alleged violation to the potential defendant and government regulators sixty days prior to initiating such a "citizen suit." 33 U.S.C. § 1365(b)(1)(A). Citizen suits may only be brought in the district in which the violation is alleged to be occurring. 33 U.S.C. § 1365(c)(1).

II. **Procedural Background**

The first action related to this suit occurred when RRBA successfully intervened in a state enforcement case regarding violations at the Roxboro Station. (*See* dkts. 1-6, 1-7). On February 13, 2017, RRBA's motion for summary judgment in that state case was denied. (Dkt. 19-9). RRBA then issued a Notice of Intent to Sue (the "Notice") under 33 U.S.C. § 1365 on March 13, 2017, which would have permitted it to bring suit in federal court for violations of the CWA after sixty days. (Dkt. 1-1). On March 21, 2017, the North Carolina court adjudicating the state enforcement case issued a stay on litigation activities until April 27, 2017. (Dkt. 19-10). Duke Energy filed the present suit on May 11, 2016 — two days before RRBA could have filed a federal suit under § 1365 — seeking declaratory judgment on issues related to RRBA's Notice.

On May 16, 2017, RRBA filed a CWA citizen suit pursuant to the Notice in the Middle District of North Carolina. (Dkt. 19-12).

RRBA alleges that Duke Energy is engaging in forum shopping because the Middle District of North Carolina, where the Roxboro Station is located, had made several rulings unfavorable to Duke Energy in cases closely related to the present one. In *Roanoke River Basin Ass'n v. Duke Energy Progress, LLC*, No. 1:16-cv-07 (M.D.N.C. Apr. 26, 2017) the court dismissed some, but not all, of the RRBA's claims against Duke Energy under a "diligent prosecution" theory, which is the same as Duke Energy's Count 8 here.[1] (Dkt. 15-1). This case involved allegations similar to the ones here involving the Mayo Station — a coal generating station located only a few miles from the Roxboro Station. In *Yadkin Riverkeeper, Inc. v. Duke Energy Carolinas, LLC*, 141 F. Supp. 3d 428, 434 (M.D.N.C. 2015), *motion to certify appeal denied*, No. 1:14-CV-753, 2016 WL 6783918 (M.D.N.C. Jan. 29, 2016), the Middle District of North Carolina denied a motion to dismiss by Duke Energy in a case involving a different coal plant that contained many of the same issues addressed here. Eventually, the case was settled with Duke Energy agreeing to remove coal ash from its existing basins — the same relief sought by RRBA in its recent lawsuit related to the Roxboro Station. (Dkts. 15-2; 19-12 at 11).

**III.    Factual Background**

Plaintiff Duke Energy operates the Roxboro Station, a coal-fired power plant on a 600-acre site in Person County, North Carolina. (Dkt. 1 at 4). The Roxboro Station produces various wastewaters which are treated before being permitted to enter waters of the United States, pursuant to the CWA. (*Id.* at 7). The Roxboro Plant impounds its wastewater in a series of

---

[1]    Under 33 U.S.C. § 1365(b)(2), "No action may be commenced . . . if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order."

lagoons and causeways on the property. (*See* dkt. 1). Ultimately, treated water from these wastewater impoundments flows into Hyco Reservoir through a point source permitted under the CWA. (*Id.* at 22). In its Notice of Intent to Sue, RRBA alleged the following violations occurring at the Roxboro Station: (1) that certain lagoons and canals of the Roxboro wastewater system were waters of the United States themselves, thus making discharges of wastewater into them unpermitted discharges under the CWA; (2) that Duke Energy is in violation of its National Pollutant Discharge Elimination System ("NPDES") permit by failing to prevent removed substance pollutants from its wastewaters from entering waters of the United States; and (3) that Duke Energy was making unpermitted discharges into waters of the United States via groundwater hydrological connections. (*Id.* at 27–29).

IV. **Standards of Review**

RRBA brings a facial challenge to the Court's subject matter jurisdiction over this suit under Federal Rule of Civil Procedure 12(b)(6). A facial challenge is one which argues that "the complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). For facial challenges, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id.*

RRBA's venue challenge is governed by Federal Rule of Civil Procedure 12(b)(3). Under Rule 12(b)(3), "the plaintiff bears the burden of establishing that venue is proper." *Jones v. Koons Automotive*, Inc., 752 F. Supp. 2d 670, 679 (D. Md. 2010). In deciding the motion, "all inferences must be drawn in favor of the plaintiff, and the facts must be viewed as the plaintiff most strongly can plead them. *Id.* at 680 (internal quotation marks omitted).

When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept as true all well-pleaded allegations. *See Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). Stated differently, in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

V. Discussion

   a. **Subject Matter Jurisdiction**

Before determining whether subject matter jurisdiction exists, the Court must identify the theory under which subject matter jurisdiction is being asserted. In their briefs, the parties struggle to identify exactly what constitutes Duke Energy's cause of action. In one footnote, Duke Energy seems to argue that subject matter jurisdiction stems from the Declaratory Judgment Act. (Dkt. 19 at 11 n. 8 ("Here, however, Duke Energy does not attempt to state a claim under the Clean Water Act. It is proceeding under the Declaratory Judgment Act.")). Duke Energy also asserts that it is not proceeding under 33 U.S.C. § 1365, but that its suit still arises under the CWA. (*See* dkt. 19 at 17). These somewhat confusing assertions seem to come from Duke Energy's argument that the Court's subject matter jurisdiction comes from the Clean Water

Act (via 28 U.S.C. § 1331), but that the cause of action comes from the Declaratory Judgment Act.

The Declaratory Judgment Act, however, does not create an independent cause of action. *CGM, LLC v. BellSouth Telecommunications, Inc.*, 664 F.3d 46, 55 (4th Cir. 2011) ("[The Declaratory Judgment Act] is remedial only and neither extends federal courts' jurisdiction nor creates any substantive rights."); *Bristol Univ. v. Accrediting Council for Indep. Colleges & Sch.*, No. 16-1637, 2017 WL 2495201, at *2 n.1 (4th Cir. June 9, 2017) ("Of course, the Declaratory Judgment Act creates [no] substantive rights." (internal quotation marks omitted)); *Webster Cty. Lumber Co. v. Wayne*, 61 F. App'x 63, 66 (4th Cir. 2003) (noting in a declaratory judgment suit that "[a]ppellants point to no statutory federal cause of action that could provide the basis for any coercive action by appellants or appellees, nor to any state cause of action where this federal issue could form a substantial and necessary component.").

Therefore, Plaintiff Duke Energy's claim must be based on some other source, namely the CWA. There is no conceivable cause of action under the CWA (or one posited) except for that under the citizen suit provision, 33 U.S.C. § 1365. Only statutorily specified causes of action are permitted under the CWA, so Duke Energy cannot assert a claim based generally on the CWA. *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 10–11 (1981). Duke Energy may, however, bring a suit seeking adjudication of Defendant RRBA's potential claims under § 1365. *See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. California*, 463 U.S. 1, 19 n.19 (1983) ("[T]he declaratory remedy . . . was designed to permit adjudication of either party's claims of right."). Further, in reading the complaint and briefing, it appears clear that Duke Energy is asserting a claim arising under the Clean Water Act; specifically one based on RRBA's potential (now actual) citizen suit under § 1365. (*See* dkt.

19 at 10–11 (arguing that subject matter jurisdiction exists because Defendant's "claims alleged in the Notice arise under the Clean Water Act")).

Accordingly, the Court's analysis will proceed under the conclusion that Plaintiff's cause of action must be based on 33 U.S.C. § 1365. RRBA asserts that this suit lacks subject matter jurisdiction because it does not arise under federal law within the meaning of 28 U.S.C. § 1331. RRBA argues that because Duke Energy could not assert a claim under the CWA's citizen suit provision and because the CWA allows no other implied causes of action, there is no federal basis for the claim. Duke Energy maintains that the suit arises under federal law because the test for whether declaratory judgment suits arise under federal law includes whether the declaratory defendant's potential suit could have arisen under federal law.

Duke Energy's interpretation of § 1331 subject matter jurisdiction under the Declaratory Judgment Act is correct. Subject matter jurisdiction exists for "suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question." *Franchise Tax Bd*, 463 U.S. at 19; s*ee also Columbia Gas Transmission Corp. v. Drain*, 237 F.3d 366, 370 (4th Cir. 2001) ("[T]he proper jurisdictional question is whether the complaint alleges a claim arising under federal law that the declaratory judgment defendant could affirmatively bring against the declaratory judgment plaintiff."); *Standard Ins. Co. v. Saklad*, 127 F.3d 1179, 1181 (9th Cir. 1997) ("A person may seek declaratory relief in federal court if the one against whom he brings his action could have asserted his own rights there."); *Energy Recovery, Inc. v. Hauge*, 133 F. Supp. 2d 814, 817–18 (E.D. Va. 2000) ("As parties must switch their plaintiff and defendant roles in a declaratory judgment action, subject matter jurisdiction is based upon whether a defendant could have initially brought the threatened litigation action for which declaratory relief is sought.").

7

Here, as RRBA's Notice and subsequent complaint in the Middle District of North Carolina demonstrate, it is able to affirmatively assert the rights at issue in Duke Energy's declaratory suit in federal court under 33 U.S.C. § 1365. Therefore, subject matter jurisdiction for Plaintiff's suit exists under 28 U.S.C. § 1331 in this case.

### b. Venue

RRBA seeks dismissal of Duke Energy's case under 28 U.S.C. § 1406 because it has been incorrectly filed in the Western District of Virginia rather than in the Middle District of North Carolina ("the MDNC"). Section 1406 provides in relevant part that district courts "shall dismiss" a "case laying venue in the wrong division or district." Alternatively, RRBA seeks the transfer of this case to the MDNC.

#### i. Dismissal

RRBA asserts that venue here is governed by the venue provision found in 33 U.S.C. § 1365(c)(1), which states: "Any action respecting a violation by a discharge source of an effluent standard or limitation or an order respecting such standard or limitation may be brought under this section only in the judicial district in which such source is located." Because this provision would (and did) require RRBA to file its suit in the MDNC where the Roxboro Station is located, RRBA argues that Duke Energy should not be allowed to skirt this requirement through a declaratory judgment suit adjudicating the same rights. Duke Energy contends that, as the alleged polluter, it could not have brought a suit under § 1365, and thus it is not be bound by its venue requirements. Instead, Duke Energy argues that venue would be proper in the Western District of Virginia under the general venue requirements of 28 U.S.C. § 1391, because it is the judicial district in which Defendant RRBA "resides."

In looking at the plain language of § 1365(c)(1), the Court concludes that Plaintiff Duke Energy is required to abide by its terms. It is uncontested that Duke Energy is bringing an "action respecting a violation" of the CWA. 33 U.S.C. § 1365(c)(1). What is disputed is whether Duke Energy's suit is "brought under this section." *Id*. Duke Energy's contention — that it is bringing suit under the Declaratory Judgment Act rather than the Clean Water Act — is untenable. As discussed previously, the Declaratory Judgment Act "is remedial only and neither extends federal courts' jurisdiction nor creates any substantive rights." *CGM*, 664 F.3d at 55. There is no freestanding claim that Duke Energy can assert under the Declaratory Judgment Act, rather, it is seeking an adjudication of RRBA's rights under § 1365. *See Franchise Tax Bd.* 463 U.S. at 19 n.19 ("[T]he declaratory remedy . . . was designed to permit adjudication of either party's claims of right."). Thus, Duke Energy's claim is the type of "action respecting a violation . . . brought under this section" that must abide by the same requirements as the underlying substantive claim. *See CGM*, 664 F.3d at 55–56 ("[A] request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred." (quoting *Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997) (alteration in original))).

Plaintiff Duke Energy also argues that it may waive the venue requirement of § 1365, citing *Long Beach Twp. v. City of N.Y.*, 445 F. Supp. 1203, 1207 n.2 (D.N.J. 1978) for its statement that "I believe that any rights obtained under this venue provision [33 U.S.C. § 1365(c)(1)] are waivable." This statement does not directly apply here because as *Long Beach* noted, objections to venue are "a privilege personal to each *defendant*," while Duke Energy attempts to waive this venue privilege as a *plaintiff* in this case. *Long Beach*, 445 F. Supp. at 1207 n.2 (emphasis added). This argument is also unpersuasive as the statement in *Long Beach*

was dicta and the case is not binding on this court. *Ohio Pub. Interest Research Grp. v. Wheeling-Pittsburgh Steel Corp.*, No. C2-88-1523, 1989 WL 201270, at *3 (S.D. Ohio Sept. 25, 1989) (noting *Long Beach* statement is dicta).

Accordingly, the Court holds that Plaintiff Duke Energy must abide by the special venue provision of 33 U.S.C. § 1365(c)(1). Under § 1365, venue is improper in the Western District of Virginia and Duke Energy's suit will be dismissed under 28 U.S.C. § 1406.

### ii. Transfer

In the alternative, RRBA asks the Court to transfer this matter to the MDNC under 28 U.S.C. § 1404. The justification for this transfer is that the MDNC is a more appropriate forum, considering the factors contained in the general venue statutes. However, transfer is not in the interests of justice here where RRBA has already initiated a nearly identical suit in the MDNC. Instead, as discussed above, the suit will be dismissed.

### c. Declaratory Judgment Act

Even if venue were proper, the Court would exercise its discretion under the Declaratory Judgment Act to decline jurisdiction. It is well established that district courts possess discretion to decline to hear suits for declaratory judgment. *See J.B. Hunt Transp., Inc. v. Innis*, 985 F.2d 553 (4th Cir. 1993) ("Under the Declaratory Judgment Act, federal courts have the discretion to decide whether to hear a declaratory judgment action."); *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493–94 (4th Cir. 1998) ("The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that district courts 'may declare' the rights of interested parties. This permissive language has long been interpreted to provide discretionary authority to district courts to hear declaratory judgment cases."). This discretion stems from the fact that declaratory judgment is a remedy, much like an injunction, that a court may decline to order. *Aetna Cas. & Sur. Co. v.*

*Quarles*, 92 F.2d 321, 323–24 (4th Cir. 1937) ("The declaring of 'rights and other legal relations' without executory or coercive relief is an extraordinary remedy, the granting of which, like the remedies mentioned, should certainly rest in the sound discretion of the court because of the liability of abuse to which it might otherwise be subjected.").

The exercise of this discretion is guided by the two primary policy considerations behind declaratory judgment, that the remedy: (1) "will serve a useful purpose in clarifying and settling the legal relations in issue, and" (2) "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *J.B. Hunt Transp., Inc. v. Innis*, 985 F.2d 553 (4th Cir. 1993) (quoting *Aetna,* 92 F.2d at 325); *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 594 (4th Cir. 2004). Additionally, declaratory suits should be declined where the suit is being used as a "race to the courthouse" or for forum shopping. *Learning Network, Inc. v. Discovery Commc'ns, Inc.*, 11 F. App'x 297, 301 (4th Cir. 2001); *Myles Lumber Co. v. CNA Financial Corp.,* 233 F.3d 821, 824 (4th Cir. 2000); *Centennial Life Ins. v. Poston,* 88 F.3d 255, 257 (4th Cir. 1996); *Nautilus Ins. Co. v. Winchester Homes, Inc.,* 15 F.3d 371, 377 (4th Cir. 1994).

In the present case, several factors counsel against this Court entertaining this declaratory suit. Primarily, the Court will not permit this suit because Duke Energy appears to be engaging in forum shopping and a "race to the courthouse." The procedural posture of this case indicates that Plaintiff has attempted to avoid litigating these same issues in the MDNC. Plaintiff was on notice of the possibility it would soon be sued in the MDNC for alleged CWA violations at the Roxboro Station — both through RRBA's Notice and because 33 U.S.C. § 1365 dictates that CWA citizen suits be brought in the district in which the alleged violation is occurring. Despite the fact that its own facility was located in the MDNC, Duke Energy decided to file suit in this district instead.

The timing of the suit reinforces the inference that Duke Energy was avoiding litigation in the MDNC, as Duke Energy filed this suit just two days before RRBA was permitted to file its citizen suit in the MDNC under § 1365.

The case law also demonstrates that the MDNC may have been a less favorable venue for Duke Energy to litigate these issues. While it is true that rulings in the MDNC have not been uniformly unfavorable to Duke Energy, there nonetheless have been several unfavorable ruling for Duke in that district related to the issues of this case. *See, e.g., Roanoke River Basin Ass'n v. Duke Energy Progress, LLC*, No. 1:16-cv-07 (M.D.N.C. Apr. 26, 2017); *Yadkin Riverkeeper, Inc. v. Duke Energy Carolinas, LLC*, 141 F. Supp. 3d 428, 434 (M.D.N.C. 2015). The Western District of Virginia is a comparably blank slate on these issues, and would at least theoretically grant Duke Energy a greater chance at success for issues on which the MDNC has already ruled unfavorably. The fact that Duke Energy both knowingly avoided litigation in the MDNC and had a strategic reason to do so gives rise to the concern that it is improperly using the Declaratory Judgment Act to engage in forum shopping.

Outside of forum shopping concerns, permitting suits of this type would render useless the sixty-day notice requirement of CWA § 1365 for citizen suits. This requirement serves the important purpose of giving state and federal regulators the opportunity to determine whether they will supplant the citizen suit with their own enforcement action. *See Hamker v. Diamond Shamrock Chem. Co.,* 756 F.2d 392, 396 (5th Cir. 1985); *Am. Canoe Ass'n v. City of Attalla*, 363 F.3d 1085, 1087 (11th Cir. 2004) ("[T]he Clean Water Act affords governmental entities . . . a full 60 days to consider and to take action"). This interest of regulators exists independent of Duke Energy's own interests, and thus cannot be waived by Plaintiff in bringing this suit. It would be contrary to these procedural requirements of the CWA to limit citizen suits as

described above, yet permit declaratory suits by potential defendants which also rely on § 1365 to completely skirt these requirements. Reinforcing this conclusion is the fact that Duke Energy cites no case in which a court has even addressed — much less permitted — a suit such as this, despite the fact that the CWA citizen suit provision has been in existence for decades.

Additionally, permitting Duke Energy to avoid the requirements of § 1365 would be inequitable to citizen-parties such as the RRBA. Parties bringing actions under 33 U.S.C. § 1365 would be forced to abide by these procedural requirements, yet, without any justification, parties bringing declaratory suits would not be. This asymmetry would permit potential defendants in every CWA citizen suit case to forum shop, against the express terms of § 1365(c), so long as they preempted the potential plaintiff before the sixty-day limit of 33 U.S.C. § 1365(b)(1)(A) expired.

Thus, as an alternative ground to dismissing this suit for improper venue, the Court will exercise its discretion to decline to hear this declaratory judgment suit. Entertaining the suit would permit an improper race to the courthouse in order to engage in strategic forum shopping, and would run contrary to the plain terms and policy of the CWA.

## VI. Conclusion

For the reasons articulated above, Defendant RRBA's motion to dismiss will be **GRANTED**. Plaintiff Duke Energy's suit will be **DISMISSED WITHOUT PREJUDICE**.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

Entered this  3rd   day of August, 2017.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE